CALEDONIAN INS. CO. et al. v. LEVY.

(Circuit Court of Appeals, Ninth Circuit. October 7, 1912.)

No. 2,113.

MASTER AND SERVANT (§ 73*)—CONTRACT OF EMPLOYMENT—ENFORCEMENT.

Plaintiff contracted with certain insurance companies to turn over all his insurance business, in consideration of receiving from them as full compensation for his services $1,000 for each month, which the contract provided should cover plaintiff's services and also the clerical services of plaintiff's employés. Soon after the contract was made it was repudiated by defendants, owing to the San Francisco earthquake and fire, and at the end of the first year plaintiff sued for and recovered a judgment for the total amount then due under the contract which was paid. During

the second year, however, he continued to deliver business to defendants under the contract, but retained 15 per cent. of the premiums for alleged "office expenses." *Held*, that the retention of such percentage constituted a breach of the contract by plaintiff, and precluded him from recovering the contract compensation for the second year.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 90–102; Dec. Dig. § 73.*]

In Error to the District Court of the United States for the Second Division of the Northern District of California.

Action by S. W. Levy against the Caledonian Insurance Company and others. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

T. C. Van Ness and Otto Irving Wise, both of San Francisco, Cal., for plaintiffs in error.

Goodfellow, Eells & Orrick, of San Francisco, Cal., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. In the spring of 1906 the plaintiffs in error were carrying on the business of fire insurance in the city and county of San Francisco, occupying a common office there, and with a common manager of such business, duly authorized to make the contract upon which the present action is based. The contract was made on the 1st day of April, 1906, and by its terms was to continue for a period of two years thereafter. It was made in the form of a letter addressed by the manager of the insurance companies to the defendant in error, S. W. Levy, and by him accepted in writing. The letter (stating that portion of the contract pertinent to the present case and accepted as the contract by the defendant in error, plaintiff below) is as follows:

"Referring to our verbal understanding of recent date, have now to confirm same as follows: For and in consideration of the sum of one thousand dollars ($1,000) payable to you monthly, you agree to place in the companies represented in this office, or through them, any and all fire insurance business which you may be able to secure or control. * * * That the consideration above expressed shall cover any and all compensation for services rendered by yourself and clerical service of your employés to the companies represented in this office and its management."

Shortly after the making of the contract, and in the same month, the earthquake and fire occurred which destroyed the main portion of the business district of the city of San Francisco, after which the insurance companies notified Levy that they elected to rescind the contract upon the ground that the destruction of property in San Francisco, upon which they claimed the great bulk of his business was obtained, resulted in a failure of the consideration for the contract in material part. In response to that notice Levy, on the 22d of June, 1906, wrote the companies as follows:

"Gentlemen: Referring to your note of June 21, 1906, in which you declare that my contract with you, dated March 31, 1906, by which you undertook to pay me $1,000 monthly for two years from April 1, 1906, is 'rescinded,'

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

I beg to reply that I do not recognize your right so to terminate the contract, and that I insist on its performance. I have in all respects kept this contract on my part, and am now doing so, and I intend to keep it, fully and fairly, during its term; and I shall expect to be paid by you the stipulated consideration. You are now in arrears for April and May, and unless full payment is made to me by July 1st I shall be compelled to bring suit against you, jointly and severally, for the sum then due.

"Very truly yours,           S. W. Levy."

The evidence shows without conflict that Levy from the time of the making of the contract placed all insurance procured by him or through his office with the companies, and that he made a demand monthly on them for the payment of $1,000, which demand was refused. He then commenced an action in one of the superior courts of the state to recover the amount alleged to be then due him under the contract, which action was tried in the month of April, 1907, and resulted in a judgment in his favor for $12,000, being $1,000 a month for the first 12 months covered by the contract. From that judgment the companies appealed to the Supreme Court of the state, which appeal was not determined until November 23, 1909, when the judgment was affirmed (156 Cal. 527, 105 Pac. 598), and the amount of the judgment was thereafter duly paid.

In the meantime, to wit, April 27, 1907, Levy, through his attorneys, wrote to the companies the following letter:

"San Francisco, Apr. 27—07.

"Office of Goodfellow & Eells, San Francisco, Cal.

"Thomas J. Conroy, Esq.,
     "Caledonian Insurance Company,
     "Rochester German Insurance Company,
     "Caledonian-*German* Insurance Co., and
     "The Scottish Underwriters.

"Dear Sir: We are instructed by Mr. S. W. Levy to inform you of his intentions respecting the contract which he made with you dated March 3, (31) 1906, to wit: He will continue to render his services under the contract until the end of the present month, at which time he will make demand upon you for his compensation, according to the contract. If you still refuse payment, and still persist in claiming that the contract has been rescinded, he will consider that you have committed a breach of the contract, and will sue you once and for all for damages. Mr. Levy is, and always has been, ready and willing to carry out the contract on his part, and to continue it to the end of the term of two years. He hopes that you will conclude to abandon the position which he considers and is advised to be utterly untenable, to wit, that the contract has been terminated by the destruction of property in the burned district.

"We are, yours very truly,        Goodfellow & Eells.

"P. S.—We beg to notify you also that we have advised Mr. Levy, for his protection, to issue a writ of attachment in each of the cases pending, which writ will be issued on Monday next. We give you this notice in order that you may be prepared to furnish the necessary bond on release of attachment."

The evidence shows that the usual brokerage for insurance taken to such companies by a broker was 15 per cent. of the premiums collected, and that to the last letter above quoted the companies in question replied to Levy that, if the courts should finally decide that they were not released from their obligation under the contract for the reason above indicated, they would pay him $1,000 a month as pro-

vided for in the contract; otherwise, they would pay him the usual brokerage of 15 per cent. for the premiums collected. The evidence further shows, without conflict, that from the beginning to the end of the second year provided for by the contract, to wit, from April 1, 1907, to April 1, 1908, Levy continued to take to the companies' office all of the insurance controlled by him, and for such as they accepted he regularly and duly took to them the premiums thereon, less 15 per cent. thereof, which he deducted and retained. The testimony of the witness Wren, who had been in his employ for about 25 years, is in part as follows:

"He (Levy) was sick in April, 1907. During the month of April, 1907, I took complete charge of the bookkeeping of plaintiff's business, and have been familiar with Mr. Levy's business from that time until the end of the contract with defendants. * * * Q. Will you state whether or not, after that time (April 1, 1907), there was any difference in the performance of the contract of furnishing business to the insurance companies? A. Except in the collection of the commissions, the business went on the same, and he furnished the business to them as before. Mr. Levy turned over to these insurance companies, or through them, all of the insurance business which he controlled. After the month of March, 1907, Mr. Levy placed all the insurance he could in Mr. Conroy's office; but, if Mr. Conroy could not take any business we offered, we placed it on the outside, but to his credit as the broker. Mr. Levy, after the month of March, 1907, collected 15 per cent. commission and retained it for that year, after notifying Mr. Conroy's office that he was going to do that, and held it for office expenses. The first payment we made Mr. Conroy's office was in June on business that was placed during the year from April, 1907, to April, 1908. When we made that payment, instead of making Mr. Conroy a payment of the gross amount of premium, we paid him net, and we told him the reason we were doing so was we withheld those commissions to pay office expenses. * * * "

Pursuant to the letter of April 27, 1907, already set out, and shortly thereafter, Levy commenced suit in one of the superior courts of the state against the companies to recover the entire compensation, to wit, $12,000, which would accrue to him under the terms of the contract during the second year therein provided for, and, having been nonsuited in the state court, commenced the present action in the court below.

As has been said, the facts of the case are undisputed. It is so conceded by counsel, and was so stated by the trial court, which denied a request of the defendants for a directed verdict, and then charged the jury as follows:

"This is an action upon a contract, in which the plaintiff seeks to recover from defendants on account of the breach of the contract by defendants. In such an action plaintiff must prove either performance on his part of the agreement or that he was prevented from performing by the acts of the defendants. In this action plaintiff has elected to rely upon his performance. Therefore, I instruct you that if, from the evidence, you find that the plaintiff has failed to perform any of the conditions contained in the contract dated March 31, 1906, on his part to be performed, your verdict must be for the defendants in this action.

"I further instruct you that the mere fact that the defendants may have failed to pay plaintiff the sum of $1,000 in monthly installments—that is, his salary as stipulated in the contract—would not of itself constitute such a breach of the contract on the part of the defendants as would warrant the plaintiff in failing to keep the contract on his part. In other words, he

would be called upon to perform his contract and to sue for the payment of the salary which should be in default.

"The evidence in this case leaves the case really to depend upon whether the plaintiff did during this second year, which is the only portion of the term of this contract which is involved before you, perform that contract. In that regard, as to what was done there is really no dispute at all in the evidence. It is a question merely of the intent with which the acts were done, which the evidence shows were done by the plaintiff. And I instruct you in that regard that if you believe from the evidence that during the second year of the contract referred to in the pleadings, namely, from and including April, 1907, until and including March, 1908, which was the termination of the contract, the business between the plaintiff and the defendants was conducted in a manner similar to the previous year, and that the plaintiff did fulfill and perform on his part all of the terms and conditions of the contract, except that he deducted and retained, as stated by him, 15 per cent. of the premiums, in the amounts and at the times stated in his complaint, and for the reasons stated by him; that is, if you believe his evidence in that regard to be true, then I instruct you that the mere retention of such 15 per cent. of the premiums for that year for such reasons would not amount to a failure on his part to perform the contract.

"Now, if you find that he has performed the contract, in view of what I have said to you, and you further find that he paid out moneys by way of returned premiums in the manner and under the conditions set forth in the complaint, and that a balance of account therefor in the sum of $237.45 remains unpaid to him for moneys that he had paid out by way of returned premiums, then there will be but one verdict for you to find under the evidence, because there is no dispute otherwise as to amounts, and your verdict in that event will be in favor of the plaintiff for the sum of $11,710.57, which would be the amount of such unpaid return premiums and the principal amount involved in the controversy, made up of the unpaid salary for which the plaintiff sues.

"Now, the evidence is all before you, and it is largely uncontradicted, and it seems to me that there should be no difficulty in your reaching a conclusion."

There was a verdict for the plaintiff.

In our opinion there was nothing for the jury to pass upon; the real question in the case being one of law. We assume that the destruction of a large portion of the business district of San Francisco afforded no ground for the rescission of the contract by the companies. It was so held by the Supreme Court of California, upon the facts there disclosed, in the case hereinbefore referred to, pursuant to which decision the companies paid Levy the full amount due him for the first year covered by the contract. The present case was tried upon the theory that Levy performed his part of the contract covering the second year as well as the first, and in their brief here his counsel say:

"As the case was presented to the jury by both plaintiff and defendant, it is free from all doubt and difficulty, and presents a simple case of a contract having been performed by the plaintiff, and the plaintiff having received only a part of his compensation, and suing for the remainder with interest."

The court below, too, instructed the jury, as has been seen, that in the action—

"plaintiff must prove either performance on his part of the agreement or that he was prevented from performing by the acts of the defendants. In this action plaintiff has elected to rely upon his performance. Therefore I instruct you that if, from the evidence, you find that the plaintiff has failed

to perform any of the conditions contained in the contract dated March 31, 1906, on his part to be performed, your verdict must be for the defendants in this action."

The trouble is that while, during the second year, Levy continued to take to the companies all of the insurance he could control and to collect the premiums therefor, he did not do so in accordance with the provisions of the contract in question. By that contract he was required to turn over to the companies the whole of such premiums, and entitled to receive as full compensation for his services in the matter $1,000 each month. Confessedly he did not do that during the second year, but, on the contrary, from April 1, 1907, to April 1, 1908, deducted and retained from all of such premiums a commission of 15 per cent. thereof. It is wholly unimportant that he claimed to withhold the 15 per cent. of the premiums for his office expenses, and that he so informed the companies. According to the contract the companies had nothing whatever to do with his office expenses, but were entitled to the full amount of the premiums. Yet the court instructed the jury, as has been seen, that if they believed from the evidence—

"that during the second year of the contract referred to in the pleadings, namely, from and including April, 1907, until and including March, 1908, which was the termination of the contract, the business between the plaintiff and the defendants was conducted in a manner similar to the previous year, and that the plaintiff did fulfill and perform on his part all of the terms and conditions of the contract, except that he deducted and retained, as stated by him, 15 per cent. of the premiums, in the amounts and at the times stated in his complaint, and for the reasons stated by him; that is, if you believe his evidence in that regard to be true, then I instruct you that the mere retention of such 15 per cent. of the premiums for that year for such reasons would not amount to a failure on his part to perform the contract."

It results, from what has been said, that the judgment must be and is reversed, and the cause remanded for a new trial.